IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NOMAX, INC., a Missouri Corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>WRAPADE PACKAGING SYSTEMS, LLC, a<br>New Jersey Limited Liability Company,<br>**Serve:    Bill Beattie, Registered Agent**<br>             **27 Law Drive, Suite B/C**<br>             **Fairfield, New Jersey 07004**<br><br>and<br><br>BILL BEATTIE, an individual,<br>**Serve at:  180 Brighton Road**<br>               **Clifton, New Jersey 07012**<br><br>              Defendants. | Cause No.<br><br><br><br><br><br><br><br><br>**JURY DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Nomax, Inc. ("Nomax" or "Plaintiff"), by and through its attorneys, and for its Complaint against Defendants Wrapade Packaging Systems, LLC ("Wrapade") and Bill Beattie ("Beattie," and together with Wrapade, "Defendants"), hereby states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Nomax, Inc. is a Missouri Corporation existing under the laws of the State of Missouri with its principal place of business located at 9735 Green Park Industrial Drive, St. Louis, Missouri 63123. Nomax is a citizen of the State of Missouri.

2. Defendant Wrapade Packaging Systems, LLC is a for-profit limited liability company organized and existing under the laws of New Jersey, with its principal place of business located at 27 Law Drive, Suite B/C, Fairfield, Essex County, New Jersey 07004.

{5738/00026/2992528.DOCX.3}

3. Upon information and belief, Defendant Bill Beattie is the Owner of Wrapade and is a citizen of New Jersey.

4. This Court has personal jurisdiction over Wrapade by virtue of it purposefully availing itself of the opportunity to do business in Missouri and the fact that claims brought against Defendants are related to their contacts with Missouri. Among other things, Wrapade directed numerous communications to Missouri, entered into a contract with a Missouri corporation, accepted payments from a Missouri corporation, and marketed its services to a Missouri corporation.

5. This Court has personal jurisdiction over Beattie because this action arises out of or is related to Beattie's contacts with the state. Among other things, Beattie directed numerous communications to Missouri. In fact, the basis of the claims against Beattie relate to statements he made to Nomax and its officers while they were located in Missouri.

6. This Court has subject matter jurisdiction over this controversy under 28 USC § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, attorney's fees and costs, and complete diversity exists between Nomax and the Defendants.

7. Venue is proper in the Eastern District of Missouri under 28 USC § 1391(a) and 28 USC 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District and Defendants are subject to personal jurisdiction in the District as set forth herein.

**FACTUAL BACKGROUND**

8. Nomax is a manufacturing company that specializes in manufacturing a broad spectrum of pharmaceutical products within the United States

9. Wrapade is a company primarily engaged in the business of designing, building and installing custom packaging machinery.

10. On May 31, 2018, the parties entered into an agreement whereby Plaintiff agreed to purchase a Wrapade machine SN1875 ("the Machine") at a price of $195,000.00. In exchange, Defendants agreed to deliver the operating Machine by November 12, 2018.

11. Additionally, Defendants agreed to include two additional tracks for the Machine at no charge.

12. On May 31, 2018, Plaintiff made a down payment of $117,000.00 for the Machine, which was accepted by Defendants.

13. At the time the parties entered into the Agreement, Defendants quoted Plaintiff a lead time of 22-24 weeks with an estimated delivery date of November 12, 2018.

14. In reliance on Defendants' promise of delivery by the end of November, on June 11, 2018, Plaintiff agreed to add two Domino branded printers to the machine (used to print lot information on individual packages) for an additional $46,000. Plaintiff paid an additional $27,600 down payment, which constituted 60% of the quote on the printers.

15. Despite Plaintiff's payments, Defendants did not deliver the Machine as promised by November 2018.

16. For the months that followed, Defendants continued to make representations that the Machine was on its way but continued to delay on its delivery.

17. On February 26, 2019, Defendants provided an update and informed Plaintiff that the Machine would be ready and would be delivered in April 2019 and confirmed that everything with the Machine was on schedule. Beattie also represented that the engineering department was

completing the feed system design and that Defendants would release the Machine for fabrication the following week.

18. Despite these promises, Defendants did not deliver the Machine in April 2019.

19. On April 8, 2019 and April 9, 2019, Beattie told Plaintiffs they were behind schedule due to having to send out work to outside shops and losing three of its employees.

20. Still, Defendants made a new commitment that the Machine was being worked on and would be delivered in May 2019.

21. In May 2019, the Agreement was updated and Plaintiff added a Print Verification System to its order for an additional payment due of $128,350.00 and an additional $7,000.00 for the installation.

22. On May 13, 2019, Plaintiff paid Defendants $64,175.00 as a down payment for the Print Verification System.

23. In July 2019, Defendants requested additional payments in the amounts of $39,000 (for the base machine), $18,400 (for the balance on the two Domino printers), and $51,340 (for the Print Verification System), and explained that additional funds needed to be "advanced" to complete the Machine, despite Plaintiff having made all payments pursuant to the Agreement and no amounts being due.

24. On August 5 and 9, 2019, Plaintiff made all of the "advance" payments requested by Defendants.

25. On August 12, 2019, Defendants claimed, for the first time, that the Machine needed a *third* Domino printer to meet Plaintiff's requirements.

26. As a result, on October 19, 2019, Plaintiff paid Defendants *an additional* $23,000 to pay for the third printer in full.

27. On October 29, 2019, Defendants admitted to not having *any* of the printers or mounting hardware for the Machine, despite full payment having been made on the printers. Beattie stated that he would get back to Plaintiff the next day with an update.

28. Because Defendants had been unable to deliver any product for nearly a year with a variety of different excuses and new demands for payment, Plaintiff became skeptical about Defendants' ability to perform.

29. Then, on November 22, 2019, Beattie admitted on a phone call with Plaintiff that the true reason that the Machine had not been completed was because Defendants could not pay the vendors for the external components needed, including the Domino printers and external components of the base machine (e.g., the Servo system and electrical components).

30. On December 3, 2019, nearly thirteen months after Defendants agreed to deliver the Machine to Plaintiff, Defendants told Plaintiff that it owed Domino $40,285.00 – the entire amount due – for the three printers and associated hardware. Notably, Plaintiff had already paid Defendants $69,000 (obviously with a significant markup from Defendants) for the Domino printers.

31. Defendants also informed Plaintiff that they still owed Turtle & Hughes $27,618.25 for the Servo system, which was included in the base machine price.

32. Frustrated, on December 17, 2019, Plaintiff traveled to Defendants to execute the Bill of Sale and see the Machine. At this time, the Machine was not complete and still in pieces. No significant assembly of the Machine had been performed.

33. As a result of the continued delays and unfulfilled promises of delivery, Plaintiff worked directly with Defendants' third-party vendors and paid balances due from Defendants and

purchased the components to have them delivered to Defendants for inclusion on the Machine, despite the fact that Plaintiff had already paid Defendants for those components.

34. In early March 2020, Defendants informed Plaintiff that they had all the parts and were a week away from installing printers and completing the Machine.

35. On March 18, 2020, Defendants claimed they shut down its operations as a result of the COVID-19 pandemic. At this point, Defendants were already sixteen months behind in delivering the Machine and Plaintiff had made numerous payments outside of the parties' Agreement so the Machine could be completed.

36. Despite the fact that it had already represented that the Machine was nearly complete, in April 2020, Defendants sent Plaintiff an update stating that they could not complete Plaintiff's order because vendors were not allowed on their premises for safety reasons.

37. In September 2020, Defendants sent yet another update claiming the Machine was "very close."

38. Beattie stated that the Machine would be ready to ship by October 12, 2020 and that all progress to complete and deliver the Machine was "on track." Defendants also promised to send photos of its progress. Defendants did not provide the updates as promised.

39. As of the date of this Complaint, the Machine still has not been delivered.

### COUNT I
### BREACH OF CONTRACT
### (AGAINST DEFENDANT WRAPADE)

40. Plaintiff hereby restates and incorporates the allegations set forth above as if fully restated herein.

41. As set forth in detail above, Plaintiff and Wrapade entered into the Agreement, a true and correct copy of which is attached as **Exhibit A.**

42. Thereafter, the Agreement was amended and updated to include a Print Verification System and Domino printers, among other things.

43. The Agreement is a binding contract between Plaintiff and Wrapade and is supported by valid consideration.

44. Plaintiff has paid the entire balance due under the Agreement, as set forth in detail above.

45. Wrapade accepted each of the payments.

46. Upon receipt of the payments, Wrapade had an obligation to pay the third party vendors in full and facilitate and ensure the assembly and delivery of the Machine.

47. Plaintiff has performed its obligations and conditions precedent with respect to the Agreement and is entitled to enforce the Agreement.

48. Wrapade breached the agreement by, among other things, failing to timely deliver the Machine to Plaintiff, failing to purchase the components which Plaintiff paid for, misappropriating the components which Plaintiff later purchased directly from the vendors, and failing to assemble the Machine.

49. Plaintiff has been damaged by Wrapade's breach.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendant Wrapade on Count I of this Complaint in an amount to be determined in this proceeding, for cost and attorneys' fees, for all interest to which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

## COUNT II
## UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

50. Plaintiff hereby restates and incorporates the allegations set forth above as if fully restated herein.

51. Plaintiff conferred a benefit on Defendants by paying all amounts due under the Agreement, as well as paying third party vendors for supplies and parts outside of the parties' Agreement.

52. Defendants have been enriched by this benefit in that Defendants have withheld the Machine and retained funds from Plaintiff.

53. In addition, on information and belief, Defendants have used the parts purchased by Plaintiff for other clients.

54. Because the Machine was never delivered, Defendants are not entitled to the amounts paid by Plaintiff.

55. In addition, Plaintiff is entitled to refunds of the amounts paid to Defendants and the third-party vendors.

56. Defendants appreciated, accepted and retained the benefits, including by withholding the Machine and by wrongfully retaining parts for which Plaintiff paid third parties in full.

57. Under these circumstances, the retention of the components and amounts paid by Plaintiff is inequitable.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendants Wrapade Packaging Systems, LLC and Bill Beattie on this Count II of this Complaint in an amount to be determined in this proceeding, for return of all parts that were purchased by Nomax, for all interest to which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

## COUNT III
### CONVERSION
**(AGAINST ALL DEFENDANTS)**

58. Plaintiff hereby restates and incorporates the allegations set forth above as if fully restated herein.

59. Plaintiff's funds and money are the property of Plaintiff, and as such Plaintiff is entitled to the possession of its property.

60. By unlawfully withholding the Machine while accepting Plaintiff's property and/or providing Plaintiff's purchased equipment to unrelated third parties, Defendants tortiously took and exercised unauthorized control over Plaintiff's property.

61. As a result of Defendants' actions, Plaintiff has been damaged in an amount to be proven at trial.

62. The acts of Defendants as described herein were intentional, willful, wanton and malicious, and warrant an award of punitive damages.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendants Wrapade Packaging Systems, LLC and Bill Beattie on this Count III of this Complaint in an amount to be determined in this proceeding, for all interest to which it is legally entitled, for punitive damages, and for such other and further relief as is deemed proper under the circumstances.

## COUNT IV
### FRAUD
**(AGAINST ALL DEFENDANTS)**

63. Plaintiff hereby restates and incorporates the allegations set forth above as if fully restated herein.

64. Over the course of the negotiation of the Agreement and the parties' subsequent business relationship, Defendants made numerous false representations to Plaintiff in order to

induce it to enter into the Agreement and to make subsequent payments, including but not limited to the following:

- That the Machine would be delivered by November 12, 2018;

- That Defendants continued to make representations that the Machine was on its way;

- That on February 26, 2019, Beattie provided an update and informed Plaintiffs that the machine would be ready and delivered in April 2019;

- That on April 8, 2019 and April 9, 2019, Beattie made a commitment that the Machine would be delivered in May 2019;

- That pictures would be provided of the progress of the Machine;

- That the Machine was almost complete; and

- That Defendants represented that the delay was caused by third parties vendors, which caused Plaintiff to pay third party vendors.

(the "Misrepresentations").

65. In reliance on the above Misrepresentations, Plaintiff entered into the Agreement and began making upfront payments to Defendants.

66. In further reliance on the above Misrepresentations, Plaintiff ordered an additional Print Verification System and an additional third printer.

67. Also on reliance on the above Misrepresentations, Plaintiff made direct payments to third-party vendors, outside of the parties' Agreement, believing the Machine was almost complete.

68. Each of the Misrepresentations was false.

69. Defendants knew that each of the Misrepresentations were false at the time they were made to Plaintiff.

70. Defendants made each Misrepresentation with the intent that Plaintiff would rely on it in entering the Agreement, and to make subsequent payments.

71. Plaintiff did not know that any of the Misrepresentations were false, nor did it have any reason to believe any of the Misrepresentations were false.

72. Each Misrepresentation was material to Plaintiff's decision to enter the Agreement, to continue making payments to Defendants, and to make additional payments to Defendants and third-party vendors outside of the parties' Agreement.

73. Plaintiff had the right to rely on each Misrepresentation as true.  Plaintiff in fact relied on the truth of each Misrepresentation in deciding to enter into the Agreement, and to continue paying funds to Defendants and third-party vendors.  Its reliance was reasonable under the circumstances.

74. The acts of Defendants as described herein were intentional, willful, wanton and malicious, and warrant an award of punitive damages.

75. As a direct and proximate result of the above fraudulent Misrepresentations, Plaintiff was damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendants Wrapade Packaging Systems, LLC and Bill Beattie on this Count IV of this Complaint in an amount to be determined in this proceeding, for all interest to which it is legally entitled, for punitive damages, and for such other and further relief as is deemed proper under the circumstances.

## COUNT V
### FRAUD IN THE INDUCEMENT
(AGAINST ALL DEFENDANTS)

76. Plaintiff adopts and fully incorporates the forgoing paragraphs as if expressly set forth herein.

77. Defendants fraudulently induced Plaintiff to enter into the Agreement by making false promises that the Machine would be timely delivered and making continued misrepresentations regarding the status of the Machine.

78. By way of example, Defendants represented that it had the capabilities to timely deliver the Machine and that the Machine would be delivered by November 12, 2018.

79. Beattie also continually misrepresented the capabilities of Wrapade and the anticipated timeline for the delivery of the Machine.

80. These representations were made during the biding process and during the parties' discussions about the purchase of the Machine and were made before the parties entered into their Agreement for same.

81. The representations Defendants made to Plaintiff were false.

82. At the time Defendants' false representations were made to Plaintiff, Plaintiff was ignorant of their falsity.

83. Defendants knew, or had reason to know, at the time they made these representations to Plaintiff, that the representations were false.

84. Defendants' false representations were made to Plaintiff with the intent that Plaintiff would rely on them and enter into the Agreement with Defendants.

85. Defendants' false representations were material to Plaintiff's decision to enter into the Agreement and to effectuate the transfer of ownership interests in the Properties to Defendants.

86. Plaintiff had a right to rely upon, and in fact did reasonably rely upon, Defendants' misrepresentations.

87. As a direct result of Defendants' fraudulent misrepresentations, Plaintiff has incurred, and will continue to incur, significant damages.

88. Defendants' fraudulent misrepresentations were intentional, outrageous, and made with a conscious and/or reckless disregard for the rights of Plaintiff, entitling Plaintiff to punitive damages.

89. The acts of Defendants as described herein were intentional, willful, wanton and malicious, and warrant an award of punitive damages.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendants Wrapade Packaging Systems, LLC and Bill Beattie on this Count V of this Complaint in an amount to be determined in this proceeding, for all interest to which it is legally entitled, for punitive damages, and for such other and further relief as is deemed proper under the circumstances.

## COUNT VI
## SPECIFIC PERFORMANCE
### (AGAINST DEFENDANT WRAPADE)

90. Plaintiff adopts and fully incorporates the forgoing paragraphs as if expressly set forth herein.

91. A valid and forceful Agreement existed between Plaintiff and Defendant.

92. The terms of the Agreement are known to both parties with reasonable certainty.

93. Specific performance is appropriate here because Wrapade has specialized knowledge as it pertains to the Machine and no other company can build the Machine, even if Plaintiff is made whole financially.

94. Ordering such performance will not unduly burden the non-moving party.

WHEREFORE, Plaintiff Nomax respectfully requests that a Judgment be entered in its favor and against Defendant Wrapade Packaging Systems, LLC on this Count VI of this Complaint and order that the Agreement be performed as it was written and negotiated, for all interest to

which it is legally entitled, and for such other and further relief as is deemed proper under the circumstances.

        Respectfully submitted,

        CARMODY MacDONALD P.C.

By:   /s/ Tina N. Babel
       Tina N. Babel, #58247MO
       Candace E. Johnson, #70152MO
       120 South Central Avenue, Suite 1800
       St. Louis, Missouri 63105
       (314) 854-8600 Telephone
       (314) 854-8660 Facsimile
       tnb@carmodymacdonald.com
       cej@carmodymacdonald.com

Attorney for Plaintiff Nomax, Inc.